Belknap
No. 2008-392

THE STATE OF NEW HAMPSHIRE

v.

CHARLES COOK

Argued: March 18, 2009
Opinion Issued: May 15, 2009

*Kelly A. Ayotte*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*Jeffco, Starbranch & Soldati*, of Portsmouth (*Lincoln T. Soldati* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Charles Cook, appeals from a jury verdict in Superior Court (*Smukler*, J.) convicting him of one count of aggravated felonious sexual assault, *see* RSA 632-A:2, III (Supp. 2008), and one count of simple assault, *see* RSA 631:2-a, I(a) (2007). On appeal, the defendant argues that the trial court erred in denying his motion *in limine* to exclude evidence of similar conduct in Pennsylvania and in denying his motion to dismiss the misdemeanor simple assault charge. We reverse and remand.

The record reveals the following facts. The defendant was indicted on two charges: aggravated felonious sexual assault and simple assault. The former indictment alleged that between December 27, 1998, and December 26, 2002, the defendant engaged in a pattern of touching M.C.'s breast, for the purpose of sexual arousal or gratification, when she was less than thirteen years old. The latter indictment alleged that within the same time frame, the defendant caused unprivileged physical contact to M.C. by one single act of putting his tongue in her mouth. M.C. is the defendant's granddaughter.

Before trial, the defendant filed a motion *in limine* seeking to exclude prior bad acts pursuant to New Hampshire Rule of Evidence 404(b). The defendant faced charges in Pennsylvania of aggravated indecent assault, indecent assault, and corruption of minors arising out of similar acts during the same time period and involving the same victim. In addition to touching M.C.'s breasts and kissing, however, the Pennsylvania acts also included digital vaginal penetration. The trial court, pursuant to a Rule 404(b) analysis, admitted the Pennsylvania acts that were the same as those alleged in the pattern indictment — *i.e.*, touching M.C.'s breasts. The trial court found the evidence admissible to show the defendant's intent to commit a pattern of sexual assault. The trial court, however, excluded evidence of digital penetration.

At trial, M.C. testified that in 1998, when she was nine years old, she lived in Belmont with her mother and step-father. The defendant lived in Pennsylvania, but would visit often. During these visits he would tuck her into bed at night and touch her breasts and kiss her using his tongue. M.C. also testified that she would visit the defendant in Pennsylvania and the same acts would occur while they were on four-wheelers. M.C. testified that

when she would go out on trails with the defendant, the defendant would stop the four-wheeler and put his hand down her shirt and touch her breasts. Following her testimony about the Pennsylvania incidents, the defendant requested a limiting instruction. The trial court instructed the jury that it could only consider the Pennsylvania acts for the limited purpose of "determining whether the State has or has not proved the Defendant's intent to engage in a pattern."

At the close of the State's case, and again at the close of the evidence, the defendant moved to dismiss the simple assault charge, arguing that the statute of limitations had expired. The trial court took the matter under advisement, and later denied the motion.

At the close of all the evidence, the trial court gave the following instruction to the jury as to the Pennsylvania acts:

> Some evidence was introduced for a limited purpose. In particular, the State has offered evidence of other acts by the Defendant toward [M.C.] for which [he] has not been charged. If you find such evidence to be credible, you may consider it only for the limited purpose of determining whether the Defendant had the intent to engage in a pattern of aggravated felonious sexual assault as charged.

The jury returned verdicts of guilty on both charges. On appeal, the defendant argues that the trial court erred in: (1) admitting the Pennsylvania acts and its instruction to the jury; and (2) denying his motion to dismiss the simple assault charge.

We first address whether admission of the Pennsylvania acts pursuant to Rule 404(b) was error. Although the defendant characterizes this issue as plain error, *see State v. Sideris*, 157 N.H. 258, 264 (2008), the State correctly points out that the defendant timely objected at trial. The issue was thus preserved for appeal and the plain error rule is inapplicable.

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■■ The purpose of Rule 404(b) is to ensure that the defendant is tried on the merits of the crime as charged and to prevent a conviction based upon evidence of other crimes or wrongs. *State v. Beltran*, 153 N.H. 643, 647 (2006). We have established a three-part test for the admissibility of

evidence under Rule 404(b): (1) the evidence must be relevant for a purpose other than proving the defendant's character or disposition; (2) there must be clear proof that the defendant committed the act; and (3) the probative value of the evidence must not be substantially outweighed by its prejudice to the defendant. *Id.* The party offering the evidence bears the burden of demonstrating the admissibility of prior bad acts. *Id.* We review the trial court's ruling for an unsustainable exercise of discretion, and will reverse only if it was clearly untenable or unreasonable to the prejudice of the defendant's case. *Id.*

Here, as to the first prong, the trial court found that the evidence was relevant for the limited purpose of showing the defendant's intent to commit a pattern of sexual assault. The trial court stated: "[T]he state has the burden of proving more than the defendant's intent to commit each individual act of felonious sexual assault, it must also prove that the defendant had the intent to engage in a pattern." The trial court thus found that the State met its burden to prove the Pennsylvania acts were offered for a purpose other than to show the defendant acted in conformity therewith. As to the second prong, the trial court conducted a clear proof inquiry and found that the State had sustained its burden. As to the last prong, the trial court found: "[E]vidence of those Pennsylvania acts is highly probative of the defendant's intent to engage in a pattern — an element of the crime that the state is required to prove beyond a reasonable doubt." Moreover, it found: "The charged conduct here involves a pattern of assaults; therefore, the introduction of similar conduct occurring at the same time in a different place would not be surprising nor unduly prejudicial." The trial court concluded that "the danger of unfair prejudice can be addressed by a limiting instruction."

■ The defendant argues, and the State candidly concedes, that it was error for the trial court to admit this evidence for the purpose of proving the defendant's intent to commit a pattern of sexual assault. The parties agree that the State need not prove the defendant had the intent to commit a pattern of sexual assault. The defendant argues the trial court erred in so instructing the jury. Indeed, RSA 632-A:2, III provides, in pertinent part: "The mental state applicable to the underlying acts of sexual assault need not be shown with respect to the element of engaging in a pattern of sexual assault." Thus, although the State had to prove the mental state applicable to sexual assault, it did not need to prove an additional mental state to prove the pattern element. It was therefore error for the trial court to admit the Pennsylvania acts to prove intent, an issue not in dispute. *See*

*State v. Kirsch*, 139 N.H. 647, 654 (1995) ("To meet the relevancy require-ment, the other bad acts evidence must have some direct bearing on an issue actually in dispute . . . .").

The State, however, argues that although the Pennsylvania acts were admitted for the wrong purpose, the trial court's decision to admit them was not error because the evidence was relevant and admissible for another purpose — to explain why M.C. delayed disclosing the facts of the charged conduct.

"We will not reverse a trial court decision . . . when it reaches the correct result and valid alternative grounds exist to reach that result." *State v. Berry*, 148 N.H. 88, 91 (2002). We thus address whether the Pennsylvania acts were admissible for the purpose of explaining M.C.'s delayed disclo-sure. In doing so, we first address whether the evidence was relevant for this purpose. *See Beltran*, 153 N.H. at 647.

█ The State may introduce evidence to explain a sexual assault victim's behavior. *See State v. Cressey*, 137 N.H. 402, 411 (1993). "We have recognized in recent years that victims of sexual assaults may not immediately disclose them." *State v. Woodard*, 146 N.H. 221, 226 (2001). "When children are victims, they may not be aware of the wrongful nature of the conduct; other victims may wish to forget the assault, or fear reprisals or disbelief if they report." *Id.* We have thus found evidence explaining delay in disclosure to be admissible. *Id.* (finding introduction of prior disclosures admissible to explain delay); *State v. Dupont*, 149 N.H. 70, 82 (2003) (holding admissible evidence that defendant threatened to kill himself if victim disclosed sexual assault as explanation for delay in disclosure); *Berry*, 148 N.H. at 91 (holding physical abuse of victim admissible to explain delay in reporting sexual assaults because victim testified she lived in constant fear).

█ Here, the defendant was charged with a pattern of sexual touching occurring between December 1998 and December 2002. M.C. testified that the defendant touched her breasts during his visits to her house in Belmont and her visits to his residence in Pennsylvania. M.C. testified that she first disclosed the charged acts to her mother in the spring of 2003, while driving to the defendant's house in Pennsylvania, and that the abuse ended then. Thus, any delay in disclosure is between when the acts allegedly first occurred in 1998 and when M.C. disclosed in 2003. During this period, M.C. lived with her mother and not with the defendant. She did not testify that she delayed disclosing because she lived in fear as a result of the constant abuse, making the Pennsylvania acts relevant. *See Berry*, 148 N.H. at 91. Moreover, M.C.'s delay in reporting until 2003 was never questioned at trial. Instead, the evidence showed that M.C. disclosed the acts multiple

times, but no one reported them to the police. We conclude that, based upon the evidence at trial, the Pennsylvania acts are irrelevant to show any delay in disclosure. Because this evidence is not relevant, it does not meet the first prong of the Rule 404(b) test, and thus is not admissible on alternative grounds. *See id.*

■■ Alternatively, the State argues that any error was harmless. The harmless error standard is succinctly stated as follows:

> In determining the gravity of an error, this court asks whether it can be said beyond a reasonable doubt that the inadmissible evidence did not affect the verdict. The evaluation of whether this standard has been achieved involves consideration of the alternative evidence presented at trial and of the character of the inadmissible evidence itself. An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt.

*State v. Enderson*, 148 N.H. 252, 255 (2002). The State bears the burden of proving harmless error. *Id.*

■ Viewing the evidence in this case in its entirety, we cannot conclude beyond a reasonable doubt that the inadmissible evidence did not affect the jury's decision to convict. The defendant was charged with committing a pattern of sexual assault, requiring the State to prove that the charged sexual assault occurred more than once. *See* RSA 632-A:1, I-c (Supp. 2008) ("pattern" is defined as more than once over a period of between two months and five years). M.C. testified that the defendant, on more than four occasions — including once during a Christmas holiday and once during an Easter holiday — touched her breast and put his tongue in her mouth while tucking her into bed at her home in Belmont. She then testified that these same acts occurred during "four-wheeler" rides at the defendant's home in Pennsylvania. M.C. testified that in Pennsylvania "we would go out on one of the trails or something like that and he would stop the four-wheeler and that's when he would put his hand down my shirt and touch my breasts." She testified that she visited Pennsylvania "often" and the touching occurred "every time" she visited. Throughout the trial, witnesses continued to reference M.C.'s visits to Pennsylvania, including her reporting of the offenses to the Pennsylvania State Police. During closing argument, the State mentioned the Pennsylvania acts twice. Because the inadmissible evidence was intertwined with the alternative admissible evidence at trial, we cannot conclude that it was inconsequential.

M.C.'s testimony was the only evidence of the charged acts. Although her testimony does not need to be corroborated, *see* RSA 632-A:6, I (2007), the alternative evidence here was not of an "overwhelming nature, quantity or weight," and thus amplified the importance of the Pennsylvania acts. *Compare State v. Connor*, 156 N.H. 544, 549 (2007) (inadmissible fingerprint verification testimony not harmless error because fingerprint was critical piece of evidence), with *State v. Wall*, 154 N.H. 237, 245 (2006) (even if State Laboratory's test was inadmissible, error was harmless because the properly admitted evidence of the defendant's intoxication included a report of the blood alcohol content and testimony of two officers). As a result, the trial court's error had the potential to substantially prejudice the defendant.

Indeed, we have stated that "some acts have a great emotional impact upon a jury and have greater potential for appealing to a juror's sense of resentment or outrage." *State v. Marti*, 140 N.H. 692, 695 (1996). In *Marti*, the trial court admitted testimony by the victim of prior uncharged sexual assaults perpetrated by the defendant. *Id.* We stated that many of the assaults "were identical to the charged crime," which, "[b]y its nature . . . is precisely the sort of evidence that could create an undue tendency to induce a decision against the defendant on some improper basis, for it effectively obscured the charged offense and may have tempted the jury to condemn the defendant for uncharged acts." *Id.* (quotation, citation and brackets omitted). We concluded that, similar to here, the character of the inadmissible evidence prevented us from saying that the error was harmless. *Id.*; *see State v. Montgomery*, 144 N.H. 205, 210 (1999) ("Given the character of the improper evidence and the gravity of its potential prejudicial impact, we cannot say that the trial court's admission of uncharged acts of sexual assault was harmless beyond a reasonable doubt."). Therefore, admission of the Pennsylvania acts was not harmless error; accordingly, the defendant's convictions are reversed.

The State contends that the trial court's limiting instruction "actually worked in the defendant's favor by imposing an additional and unnecessary evidentiary requirement upon the State." Because of the prejudicial impact of the inadmissible evidence, however, the additional burden that the jury instruction created does not render harmless the error in admitting the Pennsylvania acts.

We next address the defendant's argument that the trial court erred in failing to dismiss the misdemeanor charge. The defendant argues that the State had the burden to prove that the misdemeanor charge was brought within the applicable statute of limitations or that the tolling provision applied. *See* RSA 625:8, I(c), VI(a) (Supp. 2008). He argues that the statute

of limitations became an element of the offense that the State had the burden to prove beyond a reasonable doubt. Although we reverse on the defendant's first argument, we still address this argument. *See State v. Sweeney*, 151 N.H. 666, 673 (2005) ("[W]e must decide this issue because . . . the Double Jeopardy Clauses of the State and Federal Constitutions would preclude a remand for a new trial.").

A statute of limitations claim is a defense that the defendant must assert. RSA 625:11, III(d) (2007); *see State v. Weeks*, 137 N.H. 687, 693 (1993), *abrogated on other grounds by State v. Knickerbocker*, 152 N.H. 467, 470 (2005); *see also United States v. Cook*, 84 U.S. 168, 179-80 (1872); *United States v. Titterington*, 374 F.3d 453, 457 (6th Cir. 2004) (stating that *Cook* is still good law). As a result, the defendant must raise the claim prior to trial. "If a defendant intends to claim any defense specified by the Criminal Code, a notice of such intention setting forth the grounds therefor shall be filed with the Court . . . in accordance with the time limitations in Rule 98 . . . ." SUPER. CT. R. 101; *see* SUPER. CT. R. 98(B)(1) (requiring notice of defense within thirty days after entry of not guilty plea). Once the defendant timely asserts his statute of limitations claim and "evidence pertaining to the statute of limitations is admitted at trial," it becomes an element of the offense. *Weeks*, 137 N.H. at 693; *see* RSA 625:11, III(d) ("element of an offense" includes "such a result of conduct as . . . [n]egatives a defense under the statute of limitations"); RSA 626:7, I(a) (2007) ("When evidence is admitted on a matter declared by this code to be . . . [a] defense, the state must disprove such defense beyond a reasonable doubt.").

■ Here, the defendant did not file a statute of limitations claim prior to trial. Instead, the defendant raised the issue for the first time at the close of the State's case. "[S]uch a proceeding would deprive the prosecutor of the right to reply or give evidence, as the case may be . . . ." *Cook*, 84 U.S. at 179. Thus, the statute of limitations did not become an element of the offense under RSA 625:11, III(d), and the trial court did not err in denying the defendant's motion to dismiss. *See* SUPER. CT. R. 101 ("If the defendant fails to comply with this rule, the Court may exclude any testimony relating to such defense or make such other order as the interest of justice requires.").

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.