Rockingham
No. 2013-812

## THE STATE OF NEW HAMPSHIRE

v.

## STANLEY R. WEST, II

Argued: September 18, 2014
Opinion Issued: February 25, 2015

*Joseph A. Foster*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Hoefle, Phoenix, Gormley & Roberts, P.A.*, of Portsmouth (*Terence M. O'Rourke* on the brief and orally), for the defendant.

BASSETT, J. Following a jury trial in Superior Court (*Delker*, J.), the defendant, Stanley R. West, II, was convicted on three counts of simple assault and one count of resisting arrest or detention. RSA 631:2-a (2007); RSA 642:2 (Supp. 2014). During trial, the defendant objected to the trial court's proposed jury instruction on the defense of premises, RSA 627:7 (2007). The trial court overruled the defendant's objection. Additionally, at the close of the State's case, the defendant moved to dismiss the resisting arrest or detention charge, arguing that the State presented no evidence that the police officer attempted to arrest or detain the defendant. The trial court denied the motion. On appeal, the defendant argues that the trial court erred: (1) by instructing the jury that the defendant must exhaust all non-violent alternatives before using force in defense of premises; and (2) by denying his motion to dismiss the resisting arrest or detention charge for insufficient evidence. We affirm.

The jury could have found, or the record establishes, the following facts. Shortly after midnight on December 19, 2012, Officer St. Onge of the Deerfield Police Department was dispatched to the defendant's house in response to a 9-1-1 call and hang-up that the dispatcher had received from the defendant's address. After ringing the doorbell, St. Onge knocked and announced himself as a police officer. After a short period, the defendant came to the door. St. Onge shined his flashlight on his uniform and badge

to show that he was a police officer. St. Onge told the defendant that the dispatcher had received a 9-1-1 call, and the defendant stated that he did not call 9-1-1. St. Onge asked if he could come inside the residence and the defendant declined. The defendant then closed the storm door. As the defendant was closing the interior door, St. Onge reached for the handle of the storm door. The defendant then charged at St. Onge, knocking him off the landing by the front door, down five or six steps, and onto the walkway. The defendant landed on top of St. Onge and punched him in the face several times.

The altercation continued for a few minutes, with St. Onge and the defendant exchanging punches. At one point, St. Onge was able to get out from under the defendant. However, St. Onge then fell backward onto the walkway. The defendant again charged at St. Onge and then sat astride St. Onge while striking him. As the defendant began to tire, St. Onge was able to grab hold of the defendant's hair. St. Onge stated, "If you let go of me, I'll let go of you." The defendant responded, "You first," to which St. Onge replied, "no." The defendant released St. Onge, who then rolled the defendant off and handcuffed him. The charges against the defendant stemmed from this incident.

At trial, the defendant moved to dismiss the resisting arrest or detention charge, arguing that there was no evidence that St. Onge attempted to arrest or detain him. The trial court denied the motion, finding sufficient evidence for a reasonable juror to conclude that St. Onge was attempting to detain the defendant during the fight.

At the conclusion of the trial, the trial court, over the defendant's objection, instructed the jury that the defendant could use force in defense of premises under RSA 627:7 "if he actually believed there was an imminent danger of . . . St. Onge entering into the Defendant's dwelling without the Defendant's permission, and that the use of force was the only reasonable means of preventing that criminal trespass." The court further instructed that the defendant's belief must be reasonable, explaining "there must be reasonable grounds for the Defendant to believe that . . . St. Onge was about to commit a criminal trespass into the dwelling, and that there were no reasonable alternatives to using force to prevent that criminal trespass." The court also instructed the jury that under RSA 627:7, "the [defendant] must reasonably believe that the criminal trespass is immediately forthcoming so that he has no opportunity to resort to the law for his protection." The jury convicted the defendant on all charges, and this appeal followed.

On appeal, the defendant argues that the trial court's jury instruction on defense of premises, requiring that no reasonable lawful alternatives to the use of force existed, was an improper interpretation of RSA 627:7. He contends that, in violation of his due process rights, the instruction

effectively relieved the State of having to disprove his defense beyond a reasonable doubt. The State counters that the defendant was not entitled to a defense of premises instruction in the first instance. Alternatively, the State maintains that the trial court's instruction accurately paraphrased RSA 627:7. The defendant also argues that the trial court erred in failing to dismiss the resisting arrest or detention charge because there was no evidence that St. Onge was attempting to arrest or detain him. The State contends that the evidence at trial was sufficient to support the jury's verdict.

As an initial matter, we note that the State argues that, because St. Onge was a police officer, the defendant was not entitled to a defense of premises instruction. *See State v. Haas*, 134 N.H. 480, 484-85 (1991) (affirming trial court's refusal to instruct jury on defense of property where charged offense involved assault on police officer). However, we decline to consider the argument because the State failed to object to the instruction at trial. *See, e.g., State v. Cheney*, 165 N.H. 677, 679 (2013).

■ We next turn to the substance of the jury instruction. "The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *State v. Etienne*, 163 N.H. 57, 70 (2011) (quotation omitted). "When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case." *Id.* (quotation omitted). "We determine whether the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case." *Id.* (quotation omitted). "Whether a particular jury instruction is necessary, and the scope and wording of jury instructions, are within the sound discretion of the trial court, and we review the trial court's decisions on these matters for an unsustainable exercise of discretion." *Id.* (quotation omitted). "To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Id.* (quotation omitted). "However, the interpretation of a statute is a question of law, which we review *de novo.*" *Id.* (quotation and brackets omitted).

The jury instruction at issue stated:

> The Defendant must have actually believed that [St. Onge] was about to commit a criminal trespass in the Defendant's dwelling. In other words, the Defendant could use force if he actually believed there was an imminent danger of [St. Onge] entering into the Defendant's dwelling without the Defendant's permission,

*and that the use of force was the only reasonable means of preventing that criminal trespass.*

Even if the Defendant actually believed that such a danger existed, his belief must be reasonable. In other words, there must be reasonable grounds for the Defendant to believe that [St. Onge] was about to commit a criminal trespass into the dwelling, *and that there were no reasonable alternatives to using force to prevent that criminal trespass.*

. . . .

So for use of force in defense of dwelling to be justified, the person must have a reasonable belief that the danger presented is imminent and in the present. That is, the person must reasonably believe that the criminal trespass is immediately forthcoming *so that he has no opportunity to resort to the law for his protection.*

(Emphases added.)

The defendant argues that the trial court incorrectly instructed the jury when it added "a prerequisite to the exercise of the Defense of Premises . . . that the defendant must exhaust all non-violent remedies before resorting to force." The State counters that the instruction was an accurate statement of the law.

The relevant portion of RSA 627:7 states:

A person in possession or control of premises or a person who is licensed or privileged to be thereon is justified in using non-deadly force upon another when and to the extent that he reasonably believes it necessary to prevent or terminate the commission of a criminal trespass by such other in or upon such premises . . . .

At issue is the trial court's instruction as it relates to the phrase "reasonably believes it necessary."

Contrary to the defendant's assertion, the trial court did not require that, in order for the defendant to invoke the defense of premises justification, he "must exhaust all non-violent remedies." Rather, the instruction was couched in terms of the defendant's belief at that time and the reasonableness of that belief, specifically that: "[the defendant] *actually believed* . . . that the use of force was the only reasonable means of preventing [the] criminal trespass"; "there must *be reasonable grounds for the Defendant to believe* . . . that there were no reasonable alternatives to using force to prevent that criminal trespass"; and "the [defendant] *must reasonably*

*believe* . . . that he has no opportunity to resort to the law for his protection." (Emphases added.) The defendant argues that the instruction was erroneous because "a reasonable juror could have concluded both that [the defendant] had acted reasonably in applying force and that [the defendant] could have exercised other, non-violent options."

■ The defendant's interpretation of the trial court's instruction fails to consider the entirety of the instruction. The instruction did *not* foreclose the possibility that a jury could conclude that the defendant actually believed that force was necessary, and that such a belief, although incorrect, was nonetheless reasonable. For example, the jury might have found that the defendant, instead of charging at St. Onge, could have closed the front door to prevent St. Onge from entering the house. If a jury concluded that closing the door was a reasonable alternative, the jury could consider this in determining, whether, under all the circumstances, there were "reasonable grounds for the Defendant to believe . . . that there were no reasonable alternatives to using force." *See State v. Leaf*, 137 N.H. 97, 99 (1993) ("[I]t is for the jury to determine whether the belief, even though honest, was in fact reasonable under *all the circumstances*." (emphasis added)). The instruction did not preclude the jury from finding in favor of the defendant in regard to defense of premises. Thus, the instruction actually given by the trial court simply does not support the interpretation advanced by the defendant: that the trial court instructed the jury that in order for the defendant to rely upon the defense of premises justification, he must have exhausted all non-violent alternatives before using force.

Rather, the challenged instruction is a correct explanation of the requirement in RSA 627:7 that one using force must reasonably believe the use of force is necessary to prevent or terminate a criminal trespass. *See, e.g., State v. Bird*, 161 N.H. 31, 36 (2010) (focusing the analysis upon "whether it was reasonable for the defendant to believe it necessary to use such force."). We note that the defendant has not argued on appeal that the challenged instruction was an improper articulation of what the term "necessary" means under RSA 627:7.

To the extent that the defendant argues that the trial court's instruction allowed the jury to make an after-the-fact determination of whether the defendant's actions were reasonable, we disagree. In its defense of premises instruction, the trial court told the jury that it was to "consider all the circumstances surrounding the incident . . . as they were presented to [the defendant] *at that time*, and not necessarily as they appear upon detached reflection." (Emphasis added.) Thus, the instruction did not allow the jury to assess the defendant's actions with the benefit of hindsight.

Accordingly, for the foregoing reasons, reading the instruction in its entirety, we conclude that the defendant has not demonstrated that the instruction given by the trial court was clearly untenable or unreasonable to the prejudice of his case. Given this conclusion, we need not address the defendant's remaining arguments that are premised upon a finding that the instruction was incorrect.

■ Although we conclude that the trial court did not err in its defense of premises instruction, we nonetheless choose to exercise our supervisory powers to provide guidance to the trial courts. *See, e.g.*, *State v. Leveille*, 160 N.H. 630, 633-34 (2010) (suggesting that the trial courts use the New Hampshire Model Jury Instructions when practicable). We recommend the following instruction be used when addressing the issue of whether a person "reasonably believes it necessary" to use non-deadly force under RSA 627:7:

> In order for the defendant's use of non-deadly force to be justified in defense of premises, the defendant must have actually and reasonably believed it was necessary to use non-deadly force to prevent or terminate the commission of a criminal trespass.

> Thus, to find that the defendant was justified in using force, you must first find that the defendant actually believed that it was necessary to use force. Then you must find that, under all the circumstances, the defendant's actual belief was a reasonable belief. If the defendant's actual belief — that force was necessary — was not reasonable, you should not find his use of force was justified. In making this determination, you should consider whether the defendant had reasonable alternatives to the use of force. If the defendant knew or should have known that he had reasonable alternatives to the use of force, you should not find his use of force was justified. On the other hand, if the defendant reasonably, but incorrectly, believed that he had no reasonable alternative to the use of force, you must find that his use of force was justified.

■ The defendant next argues that the evidence does not support his conviction for resisting arrest or detention. To prevail on this challenge, "the defendant must establish that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *State v. Fischer*, 165 N.H. 706, 712 (2013).

Under RSA 642:2, a person is guilty of resisting arrest or detention when "the person knowingly or purposefully physically interferes with a person

recognized to be a law enforcement official . . . seeking to effect an arrest or detention of the person . . . ." On appeal, the defendant argues that "the State failed to produce any evidence that St. Onge was attempting to effect an arrest or detention on [the defendant] while [the defendant] was sitting on top of him . . . ." We disagree.

■ "A conviction for resisting arrest must rest upon conduct that occurs while law enforcement is seeking to effect an arrest or detention." *State v. Lindsey*, 158 N.H. 703, 706 (2009) (quotation omitted). "The plain meaning of 'effect' includes: to cause to come into being; to bring about esp. through successful use of factors contributory to the result; ACCOMPLISH, EXECUTE." *Id.* (quotation omitted). We have previously noted that the term "detain" means "to hold or keep in or as if in custody, to keep back, and to stop or delay." *State v. Kelley*, 153 N.H. 481, 483 (2006) (quotation and brackets omitted).

■ The altercation between St. Onge and the defendant lasted a few minutes. At one point, St. Onge was holding onto the defendant by his hair, while the defendant was sitting astride St. Onge holding St. Onge's head to the ground. While the men were thus holding onto one another, St. Onge stated, "If you let go of me, I'll let go of you." The defendant did not release St. Onge, but rather replied, "You first." St. Onge then responded that he would not let go. It was after that statement by St. Onge that the defendant finally let go, and only then was St. Onge able to get out from under the defendant and place him in handcuffs. Given these facts, specifically St. Onge seizing the defendant by the hair during the course of the fight after having been knocked to the ground twice and hit repeatedly by the defendant, a reasonable juror could have found that St. Onge was attempting to detain the defendant. *See* RSA 642:2. The circumstances permit an inference that St. Onge was not only attempting to stop the assault, but also that he was attempting "to hold [the defendant] . . . as if in custody." *Kelley*, 153 N.H. at 483 (quotation omitted). Accordingly, viewing the evidence in the light most favorable to the State, we conclude that the defendant has not established that there was no evidence from which a rational trier of fact could have found guilt beyond a reasonable doubt.

*Affirmed.*

DALIANIS, C.J., and HICKS, J., concurred; LYNN, J., with whom CONBOY, J., joined, concurred in part and dissented in part.

LYNN, J., concurring in part and dissenting in part. I concur with the majority's conclusion that the trial court's jury instructions with respect to defense of premises were not erroneous, and I also agree with the proposed instruction the court recommends that trial courts utilize when defense of

premises under RSA 627:7 (2007) is at issue. However, I disagree with the majority's holding that the evidence was sufficient to support the defendant's conviction for resisting arrest or detention, in violation of RSA 642:2 (Supp. 2014).

To be guilty of violating RSA 642:2, there must be evidence that, at the time of the defendant's acts of physical interference with a person recognized to be a law enforcement officer, the officer was "seeking to effect an arrest or detention of the person or another . . . ." RSA 642:2. Here, there is no claim that Officer St. Onge came to the defendant's residence with the purpose of arresting or detaining anyone; his purpose was simply to investigate the 9-1-1 hang-up call. Nor does the State assert that St. Onge was attempting to arrest or detain the defendant when he reached for the handle of the storm door as the defendant was closing the interior door. Thus, the only basis upon which the resisting charge could be predicated is the officer's actions after the defendant attacked him and the two began struggling on the ground. The majority points to two factors as establishing the sufficiency of the evidence: (1) St. Onge's act of holding onto the defendant by his hair; and (2) St. Onge's statement that he would not let go of the defendant — a statement made in response to an exchange in which St. Onge proposed to the defendant, "If you let go of me, I'll let go of you," and to which the defendant responded, "You first." According to the majority, this evidence was sufficient for the jury to have found that St. Onge "was not only attempting to stop the assault, but also . . . was attempting 'to hold the defendant . . . as if in custody.' " In my view, this scenario constitutes far too slender a reed to permit a rational jury to find beyond a reasonable doubt that this element of the offense was satisfied. The inference that, in refusing to let go of the defendant "first," St. Onge was attempting to detain the defendant (who was then sitting on top of him) rather than merely attempting to end their physical encounter, is flatly contradicted by the officer's proposal, only a moment earlier, that he would "let go of" the defendant — the very antithesis of detaining him — if the defendant would do the same.

It appears that the defendant was convicted simply based upon the rationale that a person who assaults a police officer should know that the result of such conduct will be that the officer will place him under arrest. If that proposition were true, however, then virtually any assault of a police officer would, without more, constitute *both* the crime of assault and the crime of resisting arrest or detention. Such reasoning would effectively eliminate the "seeking to effect an arrest or detention" element from RSA 642:2. To avoid this result, I would hold that in order for a person who assaults a police officer to be guilty of the crime of resisting, in addition to the crime of assault, there must be some evidence that, in response to the

assault, the officer said or did something reflecting an effort to place the person in custody. For example, if St. Onge, during his struggle with the defendant, had stated, "Stop, you're under arrest," or any words to like effect, or taken any action indicating an intent to arrest or detain, and the defendant had not immediately disengaged, I would have no difficulty in finding the evidence sufficient to support a conviction for violating RSA 642:2. But here there is no such evidence.

Because there was insufficient evidence to satisfy the "seeking to effect an arrest or detention" element of RSA 642:2, I believe that, although the defendant's assault convictions are proper, his conviction for resisting arrest or detention should be reversed. For this reason, I respectfully dissent in part from the majority's decision.

CONBOY, J., joins the partial concurrence and partial dissent of LYNN, J.