NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2017-0443


THE STATE OF NEW HAMPSHIRE

v.

JOEL MARTIN

Argued: June 27, 2018
Opinion Issued: December 21, 2018


Gordon J. MacDonald, attorney general (Katherine A. Triffon, attorney, on the brief, and Stephen D. Fuller, senior assistant attorney general, orally), for the State.


Eric S. Wolpin, assistant appellate defender, of Concord, on the brief and orally, for the defendant.


BASSETT, J. The defendant, Joel Martin, appeals his convictions for second degree murder, second degree assault, and being a felon in possession of a dangerous weapon. See RSA 630:1-b, I(a) (2016); RSA 631:2, I(b) (2016); RSA 159:3 (2016). He argues that the Superior Court (Brown, J.) erred when it: (1) failed to inquire how he wanted to proceed if his motion to discharge his counsel were granted; and (2) denied his request to instruct the jury to

consider the effect of alcohol intoxication on eyewitness identification testimony.  We affirm.

The following evidence was presented to the jury.  On Friday, May 8, 2015, the defendant went to a Manchester nightclub.  The club was crowded and dark.  The defendant approached a group of three men, including the murder victim, and a fight broke out.  After other people intervened, the fight ended, and the defendant walked to the other side of the bar.

As one of the club promoters was speaking to the victim, the defendant approached and stabbed the victim, inflicting the fatal wounds.  As two club security guards pulled the defendant away from the victim, the defendant stabbed one guard and slashed the other.  One of the guards grabbed the defendant in a bear hug and removed him from the club.  Shortly thereafter, the defendant was found nearby with a lacerated neck and a partially amputated finger.

The defendant was later arrested and charged with alternative counts of second degree murder, two counts of second degree assault, and one count of being a felon in possession of a deadly weapon.  On May 12, 2015, counsel from the Office of the New Hampshire Public Defender was appointed to represent the defendant.  On June 3, 2015, Attorney Paul Garrity filed an appearance, and, on June 9, the defendant's appointed counsel withdrew.

Almost two years later, in a motion dated February 16, 2017, Garrity and Attorney Justin Shepherd advised the trial court that the defendant was indigent and requested that the court appoint them as his counsel.  They informed the court that, although the defendant had originally retained Garrity and that the defendant and his family had agreed to pay for Garrity's services, Garrity had not received payment since July 15, 2015.  They also reported that the total fees paid to Garrity as of February 16, 2017 were "substantially less than was called for by the fee agreement," the defendant had "filed a financial affidavit affirming his indigency," and the court had "approved requests for services other than counsel on the basis of the [defendant's] financial status." Garrity and Shepherd cited the impracticality "of the Public Defender's Office taking over a murder case approximately a week and half before trial," and requested that the trial court appoint them as trial counsel and "authorize payment for their services by the State of New Hampshire."

Two days later, on Saturday, February 18, Garrity met with the defendant.  At that meeting, the defendant asked Garrity to withdraw as his counsel.  Garrity filed a motion to withdraw on the next business day, February 21, and, on that same day, the trial court held a hearing on the motion.  After conducting an extended colloquy with the defendant and Garrity, the court orally denied the motion.  On March 3, the trial court issued a written order appointing Garrity and Shepherd as defendant's counsel and authorizing their

compensation as indigent defense counsel.  See RSA 604-A:3, :4 (2001); Sup. Ct. R. 47.

Following an eight-day jury trial, the defendant was convicted of second degree murder, two counts of second degree assault and being a felon in possession of a dangerous weapon.  This appeal followed.

The defendant first argues that the trial court erred when it "did not inform [him] of his options nor determine whether [he] wished to proceed pro se."  The State counters that, after the defendant informed the trial court that he was dissatisfied with his counsel, the trial court conducted a sufficient inquiry.

Both Part I, Article 15 of the New Hampshire Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to counsel and the right to self-representation.  State v. Sweeney, 151 N.H. 666, 670 (2005).  We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis.  State v. Ball, 124 N.H. 226, 231-33 (1983).

The right to counsel and the right to self-representation are mutually exclusive; the exercise of one right nullifies the other.  State v. Ayer, 154 N.H. 500, 516 (2006).  To be effective, an assertion of the right to self-representation must be clear and unequivocal.  Id.  This requirement is necessary to protect a defendant from inadvertently waiving the right to counsel through "occasional musings on the benefits of self-representation."  United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir. 2000) (quotation omitted).  It also "prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation."  Id. at 559.  "[I]f a defendant in a criminal proceeding makes an equivocal demand on the question of self-representation, he has a potential ground for appellate reversal no matter how the [trial] court rules."  United States v. Miles, 572 F.3d 832, 836 (10th Cir. 2009) (quotation and emphasis omitted).  To address this dilemma, and "because a waiver of the right to counsel should not be lightly inferred," appellate courts, including this court, have held that "a defendant's election to represent himself must be clearly and unequivocally asserted."  Id. at 836-37 (quotation omitted); see Sweeney, 151 N.H. at 670.

Courts should "indulge in every reasonable presumption against waiver." Brewer v. Williams, 430 U.S. 387, 404 (1977); State v. Davis, 139 N.H. 185, 190 (1994).  Notwithstanding this presumption, there is no requirement that a defendant use specific language to invoke his right to self-representation: "'[T]he triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; rather, the dialogue between the court and the defendant must result in a clear and unequivocal statement.'"  Sweeney,

151 N.H. at 670 (quoting <u>United States v. Proctor</u>, 166 F.3d 396, 403 (1st Cir. 1999)).

We have not yet had occasion to decide whether we should apply a deferential or <u>de novo</u> standard when reviewing the issue of whether a defendant's request for self-representation was clear and unequivocal. <u>See</u> <u>State v. Towle</u>, 162 N.H. 799, 803 (2011). Nor do we need to do so in this case, because the State prevails under the more exacting <u>de novo</u> standard.

The State does not contest that the defendant's request that Garrity withdraw "constituted a 'triggering statement,' and therefore necessitated an inquiry by the court." Accordingly, we will assume without deciding that the defendant's request constituted a triggering statement that required further judicial inquiry. <u>See</u> <u>Sweeney</u>, 151 N.H. at 670. After having reviewed the transcript of the colloquy conducted by the trial court with the defendant, we conclude that the court obtained sufficient clarity of the purpose of the defendant's request.

The colloquy between the defendant and the court began as follows:

THE COURT: Mr. Martin, tell me in your own words why you think you're entitled to a new counsel.

THE DEFENDANT: I have a couple -- I have a list of things that I've -- I've made a list of things that he hasn't done that I could read to you if that's possible.

THE COURT: Sure. Any way you want to tell me.

The defendant then described the areas in which he believed that his counsel's representation had been deficient. These included his: (1) delay in providing the defendant with "my full discovery"; (2) failure to request a second forensic expert; (3) attempts to persuade the defendant to accept a plea offered by the State; and (4) refusal to call a particular witness at trial. The defendant concluded:

Also, he ignores most of my requests and he actually is trying to get me to -- persuade me into taking the State's plea, which I don't want to whatsoever. I've actually voiced my opinion about what I want to do with my case and that I want to take it to trial and he's continually trying to get me to take the State's offer.

Last, but not least, there is possible that there's people on the case that possibly tampered with evidence and helped fabricate this charge, yet he refuses to investigate these facts and present it for trial.

Last, but not least, Your Honor, as you know I'm fighting for my life and I deserve to be represented zealously in every aspect and he has not done that. So I would appreciate if he was removed from my case for ineffective counsel.

After hearing from defense counsel, the trial court ruled:

Yeah, motion for new counsel is denied. We're on the eve of trial and I haven't heard anything that meets the level that would draw me to the conclusion that there hasn't been effective assistance of counsel, so we're going forward. Motion denied.

When the defendant asked whether he "could just say a couple more things, please," the court allowed him to continue. The defendant told the court that his counsel had advised him that "we can't win this case and I want to go to trial. How can I -- how do I go to trial with someone who is already defeated and telling me there's no possible way I can win, your Honor?"

The colloquy ended with the following exchange:

THE COURT: I know Attorney Garrity well enough to know that if he goes to trial, he's going to mount a strong defense. I don't think that's the issue. I think he's trying to get to you -- get into your head that maybe the facts aren't as strong as you would like them to be. You can't change the facts.

THE DEFENDANT: Yeah, I understand the evidence against me, sir.

THE COURT: Okay.

THE DEFENDANT: So I have to -- I have to go to trial with Paul Garrity is what you're telling me, sir?

THE COURT: I'm not going to replace counsel on the eve of trial based upon what I just heard. I also heard that Attorney Garrity has investigated, that he will pursue any legitimate witnesses that may come to your defense, but I don't take continuances, particularly a week from trial.

At this stage, where I've seen the work that your counsel -- counsels have put into this, to think it hasn't been competently pursued, diligently pursued, so motion to withdraw denied.

The defendant concedes that the trial court allowed him to explain his dissatisfaction with Garrity. He argues, however, that his concluding question

as to whether he "ha[d] to go to trial with Paul Garrity" "created the same ambiguity that was present in Sweeney," and that, therefore, the trial court was required to clarify the ambiguity. See Sweeney, 151 N.H. at 668-71. We disagree, as the facts in Sweeney are distinguishable.

In Sweeney, the defendant asked whether he could speak to the trial judge "privately" during a pretrial hearing held on the first day of trial. Sweeney, 151 N.H. at 668. After the trial judge advised him that it was "not allowed," id., the defendant again attempted to speak with the judge, who told him that he was "represented by very, very competent counsel." Id. The defendant persevered, attempting to address the authenticity of a proposed trial exhibit. Id. When the trial court advised him that his counsel "will make any arguments for you that have to be made," the defendant reported that his counsel had refused to make the argument. Id. The court then stated: "Well, then, as long as you're represented by him, Mr. Sweeney, then you have to pay attention to him." Id. at 669. When faced with the choice of either advancing the challenge that he wished to make or remaining silent because he was represented by counsel, Sweeney asked, "Well, sir, do I have the right to fire my lawyer?" Id. The trial court responded, "At this point in time, no. We're on the verge of starting the jury trial, sir." Id. at 669. On appeal, we held that "the trial court's summary response to the defendant's question, without further inquiry, violated his State constitutional rights and constituted reversible error." Id. at 672.

The defendant describes his final question to the trial court as one that "asked the court what options were available to him." We do not view his inquiry so broadly. Here, in contrast to Sweeney, the trial court conducted an extensive colloquy after the defendant made his request that Garrity withdraw as his counsel. The court began the exchange by asking: "Mr. Martin, tell me in your own words why you think you're entitled to a new counsel." (Emphasis added.) After describing the alleged deficiencies in Garrity's representation, the defendant concluded: "I'm fighting for my life and I deserve to be represented zealously in every aspect." (Emphasis added.) In response, the court ruled, "motion for new counsel is denied." (Emphasis added.) Throughout the hearing the trial court consistently and repeatedly referred to the defendant's request that Garrity withdraw as a motion for new counsel. Never did the defendant take issue with that reference. It was at the end of the lengthy colloquy that the defendant asked, "I have to go to trial with Paul Garrity is what you're telling me, sir?" The court responded, "I'm not going to replace counsel on the eve of trial based upon what I just heard." (Emphasis added.) Despite being given several opportunities throughout the colloquy, the defendant said nothing to the court that would suggest that he wished to proceed pro se. Although we noted in Sweeney that a defendant need not recite a talismanic formula in order to invoke the right to self-representation, id. at 670, we stated that further judicial inquiry was necessary "[o]nce the defendant makes a sufficiently clear request to indicate an intention to switch

6

representational gears." Id. at 671 (quotations omitted). Here, while the defendant clearly indicated that he wanted to fire Garrity, nothing that he said indicated that he sought to "switch representational gears" and proceed pro se. Therefore, we conclude that the trial court achieved sufficient clarity of the purpose of the defendant's request. See id.

Notably, in Sweeney, we limited our holding, explaining that "we do not hold that a trial judge must explicitly inform a defendant of his right to proceed pro se." Id. at 671. In doing so, we implicitly recognized the danger that might result if a trial court were to suggest an approach not previously contemplated by the defendant; i.e., to waive his right to counsel. The danger is "that a defendant will treat advice regarding the existence of the right as a subtle indicator that the judge is in fact recommending that he exercise the right." Com. v. Myers, 748 N.E.2d 471, 476 (Mass. App. Ct. 2001). As we observed in Sweeney, when a defendant invokes his right to self-representation, he necessarily waives his right to counsel. Sweeney, 151 N.H. at 670. In the absence of any indication from the defendant that he wished to "switch representational gears" by waiving his right to counsel, we decline to hold that the trial court was required to sua sponte advise him of his right to proceed pro se. See Brewer v. Williams, 430 U.S. at 404 (observing that courts must indulge in every reasonable presumption against waiver of right to counsel).

Next, the defendant characterizes his request that Garrity file a motion to withdraw as a "motion to fire retained counsel," and argues that the court erred by denying his motion without asking how he wished to proceed. Defendants facing criminal charges who do not require appointed counsel generally have the right to counsel of their choice. United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). In contrast, as the defendant acknowledges in his brief, "[d]efendants represented by appointed counsel enjoy a constitutional right to effective assistance of counsel, but not a right to an attorney of their choice." See Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989).

This dichotomy also exists in regard to the discharge of counsel. Although a defendant does not generally require the permission of a trial court to replace retained counsel, see, e.g., United States v. Woodard, 291 F.3d 95, 107 (1st Cir. 2002), "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." Caplin & Drysdale, 491 U.S. at 624.

The State contends that, at the time of the hearing on Garrity's motion to withdraw, Garrity was serving as appointed rather than retained counsel. The defendant, in contrast, argues that Garrity appeared at the hearing in his capacity as retained counsel. We will assume without deciding that Garrity appeared as retained counsel at the February 21 hearing.

7

We have observed that "the ethical, fair, and orderly administration of justice may outweigh a defendant's right to chosen counsel when, for example, the trial court determines that a defendant has asserted his right to dismiss counsel as a dilatory tactic." State v. Gonzalez, 170 N.H. 398, 405 (2017). "[T]he right to counsel cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." United States v. Llanes, 374 F.2d 712, 717 (2d Cir. 1967) (quotation and ellipsis omitted). "Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay." Id. Accordingly, our rules of criminal procedure specifically prohibit the withdrawal of counsel in a criminal case "after the case has been assigned for trial or hearing, except upon motion granted by the court for good cause shown, and on such terms as the court may order." N.H. R. Crim. P. 5(h). This rule applies whether counsel is appointed or retained.

Here, the case had been assigned for trial. The record does not establish that good cause existed as of February 21 to allow Garrity to withdraw and for the court to appoint new counsel. The trial court allowed the defendant to explain the reasons for his dissatisfaction with Garrity's representation, and considered them, along with Garrity's responses. The defendant expressed concern about Garrity's preparation for trial and Garrity's attempt to persuade him to consider the State's plea offer. The trial court was not persuaded by the defendant's perception of deficiencies in Garrity's performance and denied the motion to withdraw.

We note that, prior to this colloquy, the trial court had held a pretrial conference on February 15, during which counsel for both parties addressed the trial preparation that had been completed and that which remained to be done. Given the record before us, we conclude that the trial court's discretionary ruling that there was no good cause to allow Garrity to withdraw and to appoint new counsel is sustainable. See N.H. R. Crim. P. 5(h); cf. United States v. Allen, 789 F.2d 90, 93 (1st Cir. 1986) ("Good cause for substitution of counsel cannot be determined solely according to the subjective standard of what the defendant perceives." (quotation omitted)).

Although the defendant contends that the trial court "should have inquired into the availability of [the defendant's original] public defenders, their familiarity with his case, and their ability to try the case on short notice," we are not persuaded that the trial court erred when it determined that replacement of counsel was not a viable alternative to a delay in trial. At the time of the February 21, 2017 hearing, Garrity had been representing the defendant for approximately 21 months, and the second degree murder trial, which included several other serious charges, was scheduled to begin six days later. Given these facts, the trial court could have reasonably concluded that the public defender, if appointed to represent the defendant, would not have been able to adequately prepare for trial.

8

We reach the same result under the Federal Constitution.  See United States v. Mota-Santana, 391 F.3d 42, 47 (1st Cir. 2004) (defendant seeking to replace retained counsel with appointed counsel must show good cause).

Finally, the defendant argues that, because the State's case "hinged largely on the identification of [the defendant] by two eyewitnesses," and because there was evidence of eyewitness intoxication, the trial court erred when it refused to instruct the jury that it should consider evidence of intoxication when it evaluated the reliability of eyewitness testimony.  We evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case.  State v. West, 167 N.H. 465, 468 (2015).  We determine whether the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case.  Id.  Whether a particular jury instruction is necessary, and the scope and wording of jury instructions, are within the sound discretion of the trial court.  State v. Rice, 169 N.H. 783, 790 (2017).  We review the trial court's decision on this issue to determine whether its exercise of discretion is sustainable.  Id.  To establish that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case.  Id.

The trial court provided the following identification instructions to the jury:

> In this case, one of the issues is the identification of the defendant as the perpetrator of the crime.  The State has the burden of proving identity beyond a reasonable doubt.  It is not essential that a witness be free from doubt as to the correctness of his or her identification.

> However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of identification of the defendant before you may convict him.

> If you're not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

> The value of identification testimony depends on the opportunity the witness had to observe the person who committed the crime at the time of the crime, and to make a reliable identification later.

> In your appraising the identification testimony of a witness, you should consider the following: did the witness have the

9

capacity and adequate opportunity to observe the person in question at the time of the crime?

In determining this, you may consider such factors as the length of time available for the observation; the distance between the witness and the person observed; the lighting conditions; the witness's degree of attention to the person observed; the accuracy of any prior description of the alleged perpetrator; whether . . . the witness had an occasion to see or know the person identified in the past; was the identification made by the witness after the crime; . . . .

Finally, you must consider the credibility of each identification witness in the same way as any other witness, including whether you consider the witness to be truthful; and whether the witness had the capacity and opportunity to make a reliable observation on the matter covering the identification testimony.

I, again, emphasize that the State has the burden of proving identity beyond a reasonable doubt. If, after examining the evidence, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

The defendant argues that the trial court should have included the following language when it instructed the jury on the factors that it could consider when appraising identification testimony: "Whether, at the time of the observation, the witness was under the influence of alcohol and, if so, to what degree." He contends that because the court omitted evidence of intoxication from the list of factors that could be considered, "a reasonable juror could conclude that the court, and thus the law, regarded the impact of intoxication as less important than the listed factors." We disagree.

The trial court twice instructed the jury to consider the opportunity and the capacity of each identification witness when evaluating the identification testimony. Defense counsel also focused on the opportunity and capacity of the witnesses to observe the assault in his closing argument. The court instructed the jury that, in assessing identification testimony, it could consider a list of relevant factors. By using the language "such factors as" in the instruction, the court made clear to the jury that the list was non-exhaustive. Having reviewed the instructions given by the trial court in their entirety, we conclude that the defendant has not demonstrated that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case.

10

Issues raised in the defendant's notice of appeal, but not briefed are deemed waived. State v. Fiske, 170 N.H. 279, 292 (2017).

Affirmed.

LYNN, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.