Rockingham
No. 98-779

THE STATE OF NEW HAMPSHIRE

v.

DONNA L. WOODARD

April 4, 2001

*Philip T. McLaughlin*, attorney general (*Ann M. Rice*, senior assistant attorney general, on the brief and orally), for the State.

*Green & Utter, P.A.*, of Manchester, (*Philip H. Utter* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, Donna L. Woodard, appeals her conviction on nine counts of felonious sexual assault, *see* RSA 632-A:3 (1996) (amended 1997), alleging several errors by the Superior Court (*Gray*, J.). On appeal, she argues that the trial court erred: (1) by admitting the victim's mother's testimony concerning her sexual relationship with the defendant; (2) by admitting the victim's prior disclosures concerning the sexual assaults; (3) by denying her request for a bill of particulars, or, alternatively, failing to require the State to bring alternative indictments; and (4) by failing to consult with the parties prior to responding to a jury request to review a transcript. We reverse and remand.

The following facts were adduced at trial. In 1982, the defendant was a middle school teacher. The victim was a sixth grade student assigned to the defendant's homeroom. During the school year, the defendant often asked the victim to run errands for her at school and to sit on her lap at snack time. The defendant also saw the victim outside of school, taking her to the movies or for ice cream, giving her rides on her motorcycle or in her sports car, and giving

her gifts. During these outside activities, the defendant became progressively more affectionate with the victim. Shortly after the victim entered the seventh grade, the defendant and her husband moved next door to the victim's family. After a few months, the defendant and her husband separated, and the defendant eventually moved into the victim's home.

After the victim completed the sixth grade, the defendant's physical contact with her escalated. On two occasions at school, the defendant sought out the victim and in the privacy of a closet and a shower stall sexually assaulted her. The defendant also sexually assaulted her in the parking lot of a grocery store, in a dressing room at Pawtuckaway State Park, and on three occasions in the victim's home.

During this same period of time, the victim's mother found letters from the defendant to the victim in the victim's room. The notes were signed "Love, Woody" and of such an intimate nature that the victim's mother became concerned and shared the contents with her brother, her parents, and two friends. She did not, however, report her concerns to any law enforcement authorities.

The victim did not immediately disclose the assaults by the defendant. She did, however, advise the defendant at the beginning of the eighth grade that the assaults must stop. She later began telling others, including her divorced parents, about the assaults. When she learned several years later of the arrest of another teacher at her former middle school for sexual abuse, she sent a message on her computer to other town residents who subscribed to her Internet service provider that the defendant, who was still employed at the school, had sexually assaulted her. The local police learned of the Internet message and, after investigation, arrested the defendant.

At trial, the State sought to introduce evidence of a sexual relationship which the victim's mother had with the defendant approximately two years after she discovered the letters to her daughter. When the defendant objected to its relevance, the State responded as follows:

> Your Honor, it is relevant in that it is germane to the issue of motive as to the witness' motive in terms of not throwing the defendant out of the house and also in terms of not calling the police when she became suspicious of sexual activity between her daughter and the defendant and it's on that basis, not propensity, that the State intends to offer this evidence.

After adducing testimony about this relationship from the victim's mother, the State questioned her about why she neither asked the defendant to leave nor went to the police. In her response, she made no reference to her relationship with the defendant. Instead, she testified that she was afraid that if she reported the assault, the defendant would "take her [daughter] from [her]." The defendant then requested a mistrial which the trial court denied.

## I. Testimony of Victim's Mother

The State contends that testimony concerning the sexual relationship between the victim's mother and the defendant was relevant because it explained the mother's failure to report her suspicions about the assaults to the police. The defendant argues that the mother testified that she did not go to the authorities because she feared that the defendant would leave and take her daughter with her; therefore, evidence of the relationship was either irrelevant or far more prejudicial than probative.

■ Absent an abuse of discretion, we will uphold a trial court's ruling on the admissibility of evidence. *See State v. Philbrook*, 138 N.H. 601, 603 (1994). To establish that a trial court has abused its discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of the defendant's case. *See State v. Young*, 144 N.H. 477, 482 (1999).

The trial record indicates that the inquiry of the victim's mother concerning her failure to report her suspicions to the authorities was limited to the period of time after the discovery of the letters. The record establishes, however, that the victim's mother became aware of increasing evidence over time that the defendant had sexually assaulted her daughter. This evidence began with her discovery of the letters and culminated in the victim's disclosing the assaults to her mother five years after they had ceased. Despite the increasing evidence, the victim's mother continued to resist contacting the authorities.

■ We will assume, without deciding, that the trial court could have concluded that the State's introduction of evidence of the sexual relationship to explain her inaction met the threshold test of relevancy. Nevertheless, we conclude that its probative value was substantially outweighed by the danger of unfair prejudice. *See* N.H. R. EV. 403. That the relationship between the defendant and the victim's mother began almost two years after the last assault and even longer after her discovery of the letters and had ended at least two years before the victim's disclosure to her mother reduces

the probative value of the evidence. Moreover, this was but one of several explanations for the mother's inaction which the jury might have considered. Other evidence established that the victim's mother was living alone with her three daughters and working at three jobs at the time that the defendant came to live in the home. The defendant not only provided financial assistance but also assumed some responsibility for child care. Testimony also established that the defendant remained in the victim's home for a number of years, that the living space in the home was limited, and that the mother, the defendant, and on occasion, the victim shared the same bedroom. Therefore, evidence of possible emotional and financial bonds that might have existed between the defendant and the victim's mother had already been introduced.

Moreover, the potential for the jury to be unfairly influenced by whatever bias they might have concerning homosexual conduct created the danger of prejudice. *See United States v. Gillespie*, 852 F.2d 475, 479 (9th Cir. 1988); *cf. State v. Roberts*, 136 N.H. 731, 738 (1993). It was particularly relevant in this case where the defendant was on trial for the sexual assaults of a young girl. Disclosure to the jury that the defendant had engaged in a homosexual relationship could have caused the jury to conclude that she was more likely to have committed the alleged assaults. Although the trial court twice offered to give a limiting instruction, we conclude that a limiting instruction would not have cured the prejudicial effect of the testimony, but rather would have emphasized the prejudice. *See State v. LaBranche*, 118 N.H. 176, 179-80 (1978).

The State contends that the evidence was merely cumulative and that its admission was harmless. We disagree. The inadmissible testimony was the only direct evidence presented of the defendant's engaging in a consensual homosexual relationship. The inferential leaps that the jury might have been tempted to make with this evidence are simply too significant to ignore. Therefore we cannot find beyond a reasonable doubt that this inadmissible testimony had no prejudicial effect on the jury.

In the interest of judicial economy, we address the remaining issues that may arise on remand. *See State v. Frost*, 141 N.H. 493, 498 (1996).

## II. Admission of Victim's Prior Disclosures of Assaults

The defendant next contends that the trial court abused its discretion in allowing the victim and the prosecutor to refer to disclosures the victim had previously made to others about the alleged assaults. She argues that the disclosures constituted prior

consistent statements which were inadmissible absent any attempt by the defendant to impeach the victim.

Testimony that a sexual assault victim had previously disclosed the assaults to others may be admissible to contradict any inferences which might be drawn from her delay in complaining. *See State v. Lynch*, 94 N.H. 52, 52 (1946). Evidence of such disclosures was originally admitted under the doctrine of fresh complaint, which was based on the presumption that a sexual assault victim would immediately confide in someone and that if no complaint were made, it could be assumed that no assault occurred. *See* 4 J. WIGMORE, EVIDENCE § 1135, at 298 (Chadbourne rev. 1972). We have recognized in recent years that victims of sexual assaults may not immediately disclose them. *See State v. Cressey*, 137 N.H. 402, 411-12 (1993). When children are victims, they may not be aware of the wrongful nature of the conduct; other victims may wish to forget the assault, or fear reprisals or disbelief if they report.

Nevertheless, while the original premise underlying the admissibility of such disclosures may no longer be valid, they may still be admissible if offered to explain the circumstances leading to the report which resulted in the defendant's arrest. *See People v. Brown*, 883 P.2d 949, 953-60 (Cal. 1994). Introduction of earlier disclosures may be similarly admissible to reduce the risk that juries may equate the delay in making the report which resulted in a defendant's arrest with fabrication. Evidence of prior disclosures, however, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* N.H. R. EV. 403.

While the defendant contends that any explanation of delay is both impermissible absent her first questioning the delay, and prejudicial, allowing the State to bolster the victim's credibility, we disagree. To so limit admission of such evidence would allow a defendant to wait until closing argument to point out any delay in reporting a sexual assault, leaving the State with no opportunity to respond. *See Cressey*, 137 N.H. at 412 (State may offer expert testimony explaining behavioral characteristics common in child abuse victims to preempt or rebut any inferences that child abuse victim is lying). We caution that on direct examination of the victim, such evidence should be limited to the fact of the complaint and the circumstances giving rise to it. We decline, however, to adopt the new standard of *de novo* review urged by the defendant when assessing the admissibility of such evidence.

In this case, the victim was asked by the State, "Well, did you tell anybody at the time this was happening?" She provided the names of the individuals to whom she had disclosed the assaults, and also

explained her delay in making the disclosure which ultimately led to the defendant's prosecution. Her testimony was relevant to establish that prior reports had been made and the prior reports were relevant to explain her delay in making the ultimate disclosure which led to the defendant's arrest. Accordingly, we conclude that the trial court did not abuse its discretion in finding that the probative value of this testimony was not substantially outweighed by the danger of unfair prejudice.

## III. Request for Bill of Particulars or Alternative Indictments

■ The defendant next contends that the trial court's denial of her request for a bill of particulars violated her rights under Part I, Article 15 of the New Hampshire Constitution. Part I, Article 15 requires that an indictment "describe the offense with sufficient specificity to ensure that the defendant can prepare for trial and avoid double jeopardy." *State v. Johnson,* 144 N.H. 175, 177 (1999). A bill of particulars can provide such protection. A decision concerning its issuance is within the discretion of the trial court and will not be disturbed unless the defendant can demonstrate that the ruling was clearly untenable or unreasonable to the prejudice of the defendant's case. *See State v. Demond,* 136 N.H. 233, 235 (1992).

The defendant contends that because sexual penetration of a victim under the age of thirteen is a class A felony, *see* RSA 632-A:2, I(l) (1996) (amended 1999), and sexual penetration of a victim between the ages of thirteen and sixteen is a class B felony, *see* RSA 632-A:3, II, the State should have been required to specify in a bill of particulars whether the victim was twelve or thirteen at the time of the alleged offenses. The defendant asserts that the lack of such specificity deprived her of any opportunity to present a time-based defense. While, on appeal, the defendant asserts that her time-based defense is based "solely on [her] lack of opportunity to commit the act charged," the trial record reveals that the defendant had consistent access to the victim during the time alleged, first as her teacher and next-door neighbor and subsequently as a boarder in her home.

The State suggests that the defendant's alleged time-based defense may be premised on the theory that she could not be convicted of any of the charged felonies given the victim's inability to recall her age when assaulted. We agree with the State that this argument must fail.

The defendant contends that "all of the indictments on which she was convicted charge her with committing two distinct offenses." She argues that because a defendant is guilty of a class B felony for

engaging in sexual penetration with a person who is between the ages of thirteen and sixteen but a class A felony for engaging in sexual penetration with a person who is under the age of thirteen, the State must necessarily establish the victim's age to obtain a conviction. Such an interpretation would thwart the intent of the legislature.

■ The provisions of the Criminal Code are "construed according to the fair import of their terms and to promote justice." RSA 625:3 (1996). The predecessors to both RSA 632-A:2, I(l) and RSA 632-A:3, II were originally enacted in 1975. *See* Laws 1975, ch. 302 ("An Act relative to Sexual Assault and Related Offenses"). While that legislation created two classes of felony offenses for any act of sexual penetration committed against a child under sixteen years of age, both offenses specified the same *actus reus* and *mens rea*. The more severe class A felony applied to offenses against children under the age of thirteen; the class B felony applied to offenses against victims who were thirteen or older and under sixteen. We therefore conclude that the legislature's intent was to protect all young victims against sexual assault but to establish an enhanced penalty for assaults against younger victims. *See State v. Elbert*, 128 N.H. 210 (1986). To construe the statute otherwise would lead to an illogical result, allowing assailants to escape prosecution for sexual assaults whenever a victim was unable to recall whether she was twelve or thirteen at the time of the offense. Given the extensive efforts of the legislature to protect young victims against sexual assault, we cannot conclude that its intent was to prevent such prosecution. *See State v. Dixon*, 144 N.H. 273, 276-77 (1999). The lack of a more specific bill of particulars therefore did not violate the defendant's rights under Part I, Article 15 of the New Hampshire Constitution.

■ Although the issue is not fully developed, the defendant contends that the indictments were duplicitous. An indictment that charges two or more offenses in one count is duplicitous. *See State v. Patch*, 135 N.H. 127, 128 (1991). To satisfy the requirements of the New Hampshire Constitution, the indictment must be specific enough to provide notice to the defendant, protection against double jeopardy, and the reliability of a unanimous jury verdict. *See State v. Marti*, 143 N.H. 608, 615 (1999).

At the hearing on the defendant's request for a bill of particulars, the State contended that it could not bring alternative indictments for each offense charging a class A or class B felony based on the victim's age because she was unsure whether the offenses took place

before or after her thirteenth birthday. Instead, each indictment accused the defendant of engaging in the act of sexual penetration with the victim when the victim was "either twelve or thirteen years old" and charged the defendant with a class B felony.

While the indictments originally alleged that the acts took place over time periods ranging from sixteen to nineteen months, the State reduced each of those periods by three months after that hearing. Because the victim's age was in question, the court limited the State to prosecuting the defendant only on class B felonies. The State also filed a "Notice Of Agreement Not To Prosecute" forswearing any future prosecution of the defendant for any other acts of felonious sexual assault committed against the victim during the time periods alleged in the indictments. Thus, the defendant's constitutional guarantees against double jeopardy were satisfied. *See State v. Anderson*, 142 N.H. 918, 919 (1998).

*IV. Jury Inquiry*

Given our disposition of this matter, we need not address the defendant's argument regarding the court's failure to advise the parties of a request from the jury to review a transcript of witness testimony and to solicit input prior to providing a response, as the issue is unlikely to recur on remand. We note, however, that our court rules do not require that a criminal defendant be present when the trial court responds to questions from a jury. The possibility exists that a question or response might be perceived differently if the parties were present during the court's review. We therefore caution trial judges to communicate with both parties in a criminal matter whenever possible prior to responding to any questions from a jury concerning the matter on which they are deliberating. *Cf. State v. Gould*, 144 N.H. 415, 419 (1999) (directing that all communication between a trial court and jury before the jury is excused occur on the record).

Issues raised in the notice of appeal but not briefed are deemed waived. *See State v. Monroe*, 142 N.H. 857, 873 (1998), *cert. denied*, 525 U.S. 1073 (1999).

*Reversed and remanded.*

BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.