Hillsborough-southern judicial district
No. 2001-396

THE STATE OF NEW HAMPSHIRE

v.

LUIS A. HALL

Argued: October 16, 2002
Opinion Issued: December 17, 2002

*Philip T. McLaughlin,* attorney general (*Susan P. McGinnis,* attorney, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, Luis A. Hall a/k/a Luis J. Wilner a/k/a Joseph Wilner, appeals his convictions for multiple counts of felonious sexual assault, *see* RSA 632-A:3, II (1996), and providing alcohol to minors, *see* RSA 179:5 (2002). On appeal, the defendant argues that the Superior Court (*Hampsey*, J.) erred when it denied his motion to suppress, and the Superior Court (*Groff*, J.) erred when it denied his motion to dismiss, and allowed testimony that the defendant asked the victim and another girl to kiss. We affirm.

The defendant first argues that the Superior Court (*Hampsey*, J.) erroneously denied his motion to suppress his June 27, 2000 statement to police. He asserts that the statement was not voluntary and that the trial court erred by failing to consider an earlier non-incriminating statement. *See* U.S. CONST. amends. V, XIV; N.H. CONST. pt. I, art. 15. We address the defendant's State constitutional claim first, citing federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983). "We need not conduct a separate federal constitutional analysis because our State Constitution affords the defendant greater protection than does the Federal Constitution in this area." *State v. Aubuchont*, 147 N.H. 142, 146 (2001).

"Whether a confession is voluntary is initially a question of fact for the trial court, whose decision will not be overturned unless it is contrary to the manifest weight of the evidence, as viewed in the light most favorable to the State." *Id.* (quotation omitted). The State must prove beyond a reasonable doubt that the defendant's statements were made voluntarily. *Id.*

> To be considered voluntary, a confession must be the product of an essentially free and unconstrained choice and not extracted by threats, violence, direct or implied promises of any sort, or by the exertion of any improper influence. In determining the voluntariness of the confession, the trial court must examine the totality of the surrounding circumstances. Both the characteristics of the accused and the details of the interrogation are considered. The court should look at the factual circumstances surrounding the confession, the psychological impact on the defendant, and the legal significance of how the defendant reacted, in order to determine whether the police exerted such an influence on the defendant that his will was overborne.

*Id.* (quotation omitted).

On June 27, 2000, the defendant drove to the Nashua Police Department to speak with an officer about allegations that he had provided alcohol to minors and had a sexual relationship with a thirteen-year-old girl. One officer initially questioned the defendant. At the beginning of the interview, the officer administered a *Miranda* rights form. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The defendant stated he understood each right, and he signed his initials next to each right on the form. He also read and signed a waiver form, and stated that he would voluntarily speak to the officers. After about an hour of questioning, a second officer joined them. The first officer testified that he "upped the ante" of the questioning by using his interrogation skills and having another officer present. Approximately one hour later, a third officer joined them for under five minutes. The third officer told the defendant that if he did not cooperate, "the case would turn in the direction of forensic evidence." After he left, the remaining two officers questioned the defendant for about twenty-five more minutes. One officer asked the defendant if he would be surprised if the victim had kept her underwear and that it could be tested for semen; the officers did not, however, have the victim's underwear. One of the officers also asked the defendant if the victim would likely contract any sexually transmitted diseases. The defendant subsequently confessed to having had sexual contact with the victim, and he agreed to have his statement videotaped.

The defendant argues that his statement was not voluntary because the conditions surrounding his statement indicate that his will was overborne. He points to several factors to support his argument: three officers interrogated him in a confrontational and accusatory manner, they lied about having forensic evidence and referred to concerns about sexually transmitted diseases.

■ We are not persuaded that being questioned by three officers rendered the defendant's statement involuntary. As evidence that the questioning was coercive, the defendant points to testimony that one officer "confronted" the defendant with a handwritten note allegedly given to the victim by the defendant, that the officer had received interrogation training and that he controlled the pace and direction of the questions. There is no evidence, however, that the officer's questions were coercive in tone, style or content. During his videotaped confession, the defendant acknowledged that he had been treated well by the officers. Although the officers may have misled the defendant into believing they had incriminating evidence, their comments were not so deceptive as to render the confession involuntary. *See United States v. Palmer*, 203 F.3d 55, 62 (1st Cir. 2000). We are also not persuaded that raising concerns about

sexually transmitted diseases amounted to police coercion. There was no evidence of threats, violence, promises or improper influence. Considering the totality of the circumstances, we conclude that the trial court's ruling was not contrary to the manifest weight of the evidence.

The defendant also argues that in evaluating the voluntariness of his June 2000 confession, the trial court did not evaluate the totality of the circumstances because it did not consider a January 2000 statement to police. Without deciding whether a statement made to police six months prior to an allegedly involuntary confession ought to be considered as part of a totality of the circumstances analysis of the voluntariness of the confession, we conclude that the defendant's argument is unsupported by the record. The trial court stated in its order that it had considered all relevant pleadings and testimony. The order states that the defendant was interviewed on January 30, 2000, and that he denied any criminal activity at that time. The testimony at the suppression hearing included references to, and details about, the January statement. The record supports the conclusion that the trial court appropriately considered the totality of the circumstances, including the defendant's earlier statement, when it made its ruling.

The defendant next argues that the superior court erroneously denied his motion for a mistrial. Because the trial court is in the best position to gauge the prejudicial nature of the conduct at issue, it has broad discretion to decide whether a mistrial is appropriate. *State v. Kerwin*, 144 N.H. 357, 359 (1999). We will not overturn the trial court's decision absent an unsustainable exercise of discretion. *State v. Pandolfi*, 145 N.H. 508, 512 (2000); *State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). "To justify a mistrial, the conduct must be more than merely inadmissible; it must constitute an irreparable injustice that cannot be cured by jury instructions." *Kerwin*, 144 N.H. at 358-59 (quotation omitted).

The defendant argues that the trial court abused its discretion by permitting the trial to continue after a police witness twice referred to the suppression hearing. He argues that the trial court did not properly exercise its discretion, in violation of *State v. Gould*, 144 N.H. 415 (1999), because it did not sufficiently reflect on the matter or consider lesser remedies. *Gould* does not apply to this case because it involved a defendant's double jeopardy challenge to a retrial after the trial court declared a mistrial. *Gould*, 144 N.H. at 416. The defendant also suggests that by leaving the curative instruction to him, the trial court "handed off" its exercise of discretion. We fail to see how offering the defendant the

opportunity to craft his own curative instruction demonstrated the trial court's failure to exercise its discretion.

■ "Where the testimony is ambiguous, a defendant is not so substantially prejudiced that a mistrial is required." *State v. Ellison*, 135 N.H. 1, 6 (1991). The officer made vague and ambiguous references to the suppression hearing. He did not reveal information about what transpired at the hearing, what it was about, or its outcome. We cannot conclude that the trial court's ruling was clearly untenable or unreasonable to the prejudice of the defendant's case. The trial court therefore did not engage in an unsustainable exercise of discretion in failing to declare a mistrial.

■ The defendant finally argues that the trial court erroneously allowed the victim to testify that the defendant asked her and her female cousin to kiss one another. Defense counsel asked for a mistrial and then argued that the evidence should be excluded under New Hampshire Rules of Evidence 401 and 403. The court ruled that the evidence was not a prior bad act, but was

> part and parcel of the same episode, and it certainly shows what his intention is in terms of having sexual relations with this girl. And *I think it is relevant, and while it is prejudicial, I think its probative value, at least in terms of his intent and his plan, is not substantially outweighed by its prejudice*, so I'll allow it.

(Emphasis added.)

The defendant argues that because the trial court used the words "intent" and "plan" in its analysis, it must have been applying Rule 404(b). We disagree. The language of the court's ruling demonstrates that it applied Rules 401 and 403, not Rule 404(b).

The defendant also argues that because the prejudice from the testimony outweighed its probative value, the court erred by admitting it. We disagree.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. Evidence that is relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.H. R. Ev. 403. We will not overturn the trial court's rulings on the admissibility of evidence pursuant to Rules 401 and 403 absent an unsustainable exercise of discretion. *See State v. Pelkey*, 145 N.H. 133, 135-36 (2000); *Lambert*, 147 N.H. at 296.

At trial, the defendant claimed that he had engaged in only one act of sexual contact with the victim, that the victim had initiated that contact

while he was asleep, and that he was not really aware of what he was doing. The State argues that the evidence that the defendant requested the two girls to kiss was relevant to undermine his credibility and to show his intent to have sexual relations with the victim. We agree that the testimony was relevant because the jury could have interpreted it as evidence that the defendant was an active participant in sexualized contact with the victim rather than a passive recipient of the victim's advances.

The defendant argues that evidence of his request for the girls to kiss one another was an invitation to the jury to make the inferential leap proscribed in *State v. Woodard*, 146 N.H. 221 (2001). *Woodard* is easily distinguishable. In *Woodard*, the defendant was convicted of felonious sexual assault against a same-sex victim. *Woodard*, 146 N.H. at 222. We concluded that evidence that the defendant had engaged in a homosexual relationship with the victim's parent two years after the assaults on the victim had limited probative value that was substantially outweighed by the danger of unfair prejudice. *Id.* at 224-25. We stated that the potential for juror bias against homosexual conduct created the danger of prejudice. *Id.* at 225.

In this case, the evidence was relevant as explained above. The testimony did not relate to the *defendant's* homosexual conduct, and the defendant was not charged with homosexual assaults; thus there was less potential prejudice than in *Woodard*. It was not an unsustainable exercise of discretion for the trial court to conclude that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

*Affirmed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.